[Civ. No. 7989.   Third Dist.   Feb. 18, 1952.]

SIERRAVILLE COMMUNITY CHURCH (a Corporation), Respondent, v. ELIZABETH McKENZIE et al., Appellants.

Lowell & Lowell and John R. Couzens for Appellants.

John L. LaRue for Respondent.

VAN DYKE, J.—This action was brought by Sierraville Community Church, a nonprofit corporation, against "Pilgrim Congregational Church of Sierraville, by its trustees" and others.  By the complaint it was alleged that the plaintiff was interested in certain real property located in Sierra County which it claimed to own by virtue of a written instrument, and that a controversy existed between it and the defendants in the action; that the defendant Pilgrim Congrega-

tional Church of Sierraville was founded and incorporated on or about the 20th day of May, 1885, as a California corporation with a term of existence of 50 years, which expired May 19, 1935; that the alleged written instrument, a deed, dated October 21, 1948, had been executed by trustees of the defendant corporation; that just prior to the execution of the deed and on October 21, 1948 a certificate of revivor of the defunct corporation whose term of existence had so expired was issued by the Secretary of State, but that the revivor proceedings were null and void. An answer denying ownership by plaintiff was filed by "Pilgrim Congregational Church of Sierra Valley by its Trustees." Notwithstanding the slight difference in name it appears from the allegations of both the complaint and the answer that the same corporation was intended. By a cross-complaint the said defendant alleged itself to be a nonprofit corporation and in this respect, apparently depending upon the validity of certain revivorship proceedings, claimed to be the owner of the real property involved and asked that its title thereto be quieted against the claims of plaintiff. It appears that the property involved consists of approximately an acre of ground upon which there is a church and parsonage. The trial court found in favor of plaintiff and in respect of said revivorship proceedings found that the same were null and void. It was found that the plaintiff owned the property by virtue of the alleged deed and that the deed had been executed by trustees of the defunct corporation, which trustees had been elected at a meeting of the members of that corporation and that the trustees so elected were authorized to execute the conveyance. Judgment was accordingly given in favor of plaintiff, adjudging it to be the owner of the property involved and by virtue of the deed the successor in interest to the defunct corporation. From that judgment this appeal was taken. Elizabeth McKenzie and Gertrude Seabury were joined as defendants and joined in the answer and cross-complaint. They alleged themselves to be members of the defunct corporation and trustees thereof and interested in the subject of the action and they prayed that the alleged deed be canceled. It appears that the plaintiff and respondent relies upon the theory that the title to the property had vested in the nonprofit corporation, that the corporate term of existence had expired, that thereafter proceedings were taken to appoint trustees of the defunct corporation and that these trustees

had conveyed the property to respondent. It appears that it is the theory of appellant that the proceedings for the election of trustees of the defunct corporation were invalid and hence that the persons purporting to act as trustees and to convey the property to respondent were without authority so to do. We think that the contentions of appellants must be sustained and that this is made clear when the record is considered, even though all intendments in support of the trial court's judgment are indulged, as on appeal they must be.

There was received in evidence a book entitled "Record of Pilgrim Cong'l. Church. Sierra Valley, Cal." wherein is set forth under date of August 17, 1884, the proceedings taken in organization of a Congregational church in Sierra Valley. At that meeting the church's confession of faith, the covenant, and the constitution were adopted. There appears to be no doubt that by the proceedings taken at that meeting there was formed an unincorporated association, religious in character, and constituting a Congregational church. The constitution so adopted provides that the name of the church shall be the "Pilgrim Congregational Church of Christ in Sierra Valley." Its government was fixed "in the body of believers who compose it" and it was declared to be "amenable to no other ecclesiastical body." It was declared that the church would control its own affairs, but would recognize the obligation and privilege of the communion of churches. It was provided that all persons might become members of the church who gave evidence of piety and who assented to the confession of faith and covenant. A proceeding was established for induction into the church, for the trial of offenders, their punishment, and for dismission from the church. Its officers were declared to be the pastor, deacons, clerk, treasurer, superintendent of the Sabbath school and trustees. The various duties of the officers were outlined. The church so organized was an unincorporated religious association.

Under date of May 11, 1885 one Buxton, as grantor, executed a grant deed to the "Pilgrim Congregational Church of Sierra Valley, Sierra Co. Cal," stated to be "the *corporate* party of the second part" (italics ours). This deed conveyed to the grantee the real property in dispute. The deed was recorded May 18, 1885. On May 18, 1885 there was filed in the office of the County Clerk of Sierra County the articles of incorporation of the "Pilgrim Congregational Church of Sierra Valley," the defendant-appellant herein. The declared purpose of the corporation was the promotion of religious

worship in Sierra Valley, the owning of not more than 20 acres of land and the building of churches and parsonages thereon. Its term of existence was fixed at 50 years from incorporation. On May 20, 1885 the Secretary of State issued his certificate certifying that a copy of the articles of incorporation had been filed in his office on that date. The record does not contain any by-laws that may have been adopted by the corporation, nor any other corporate records save the articles referred to.

It appeared from the testimony taken that church activities were regularly carried on by the church for a very long time and some witnesses testified that these activities continued to some extent without cessation. It is not denied that during all of the time here involved there were members of the church; and while there was dispute as to whether some persons were or were not members and as to when they became members, there is none that the church ever ceased to have members and that it still has them.

While the witnesses who testified seemed to have been somewhat confused as to the relationship between the corporation and the church, we think that from the whole record it is clear as a matter of law that there never was any merging of the church with the corporation and that each continued its separate existence, the church to the present time, the corporation until May 20, 1935, at which date by the expiration of its term of existence it ceased to exist as a corporation. The evidence discloses a record of church activity as a church without reference to the corporation; and of course the corporation was in nowise necessary to church existence and activity. ▮ Even the names of the two organizations differ, the one being "The Pilgrim Congregational Church of Christ in Sierra Valley," the other being the "Pilgrim Congregational Church of Sierra Valley." The church organization was undoubtedly a part of that system of church organization which for centuries has been known as "Congregational," distinguished because it customarily "vests all ecclesiastical power in the assembled brotherhood of each local church" (Webster's Int. Dict.); and it cannot be held, merely because some nine months after its organization a lay corporation of similar name was organized, that there was in any sense any merger of the two organizations and it must result that the two continued to coexist.

It appears that long ago there was erected upon the subject property a church and parsonage and that this property

and the improvements were continuously used for church purposes by the church. The minutes of church meetings show the raising and expending of church money for construction, maintenance, repair of the church and parsonage and the insurance of the buildings against damage by fire. There is nothing in the record as to any activity by the corporation, save only its incorporation and its taking of title, up to and for long after the corporation's term of existence had expired. The church records nowhere mention the corporation and as to corporation records we have said that other than the articles there are none.

It further appears that at least some of the officers of the church were active in the creation of the corporation. At the meeting which organized the church Aaron Davis, William Tait, Thomas West, William Arms and Jacob Knuthsen were elected trustees of the church property. When, nine months later, the corporation was organized we find that those who were to act as the first directors included William Tait, Aaron Davis and William Arms. We think nothing more can be gleaned from the record on appeal respecting the interrelationship of the church and the corporation. It appears altogether likely that the title taken by the corporation through the deed from Buxton to it was merely a naked title taken by it as trustee for the church for the more convenient handling of the property and the temporal activities in connection therewith. But while this appears to be likely, yet the proof is not sufficient to warrant a finding to that effect and from the whole record it must be concluded that the title rested wholly in the corporation.

Turning again to the theory of respondent that the deed under which it claims title to the subject property was validly executed by duly elected and authorized trustees of the defunct corporation, we find that the meeting actually noticed and held, at which meeting respondent claims these trustees were elected, was a meeting of the members of the church and not a meeting of the members of the defunct corporation. Every witness who attended that meeting declared in effect that it was a meeting of the members of the church. Thus Mr. Diltz, one of the two who purported to execute the deed in controversy as a trustee of the defunct corporation, said that at the meeting he was made "a Trustee of the Pilgrim Congregational Church of Sierra Valley . . . ; that the purpose of the meeting was to reorganize the Pilgrim Church''; that he became a member of the Pilgrim Church at the first

part of the meeting and later on at the same meeting the name was changed; that he was voted into the Pilgrim Church and then the name was changed. He testified that there were nine or ten persons present. A Mr. Strang attended the meeting. He said that his wife and others had worked nearly all winter to find out who the members of the Pilgrim Congregational Church were and that at the meeting it was voted to revive the old Pilgrim Church; that it was then resolved that the name of the church be changed. He testified that he became a member of the Pilgrim Church at the meeting, being accepted by a vote of the congregation at that time and that he ceased to be a member of the church at the same meeting. Mrs. Carrie Diltz testified that she attended the meeting; that she was not a member of the church until the meeting, but belonged to the Community Church in Loyalton. Mrs. Turner testified that she, too, had attended the meeting and became a member of the Pilgrim Church thereat, ceasing to be a member on the same day because of the change of name of the church. Mr. Church, who also as a trustee executed the deed in question, testified that he attended the meeting, becoming a member of the church thereat. Appellant Elizabeth McKenzie testified and through her there was introduced in evidence the records of the church. She did not attend the meeting and testified she had no knowledge of the deed until after it had been made and delivered. Ruth Avignone testified that she had been a member of the church since 1910 or 1912; that she first learned of the deed in December, 1948, and had no notice of the meeting. Erma Strang, a witness for respondent, testified that at the time of what she referred to as "the reorganization" she had contacted older people in the community to find out the names of the members of the church and that such persons as they were informed were members were sent letters. She gave the names of some to whom she had written and testified that there were others she did not write to because she did not believe them to be members of the church; that persons who were notified of the proposed meeting were sent proxy forms whereby they could authorize another person to vote their "membership at a reorganization meeting." Mrs. Strang also testified that she joined the Pilgrim Church at the meeting and thereafter and at the same meeting ceased to be a member thereof "when the Pilgrim Church was voted to become the Community Church." She testified that the letters

which she sent concerning the proposed meeting did not state what the nature of the reorganization would be.

We have said that while the record discloses the formation of a Congregational church antecedent to the formation of the appellant corporation, with the adoption of a constitution and by-laws providing for membership and government. there is in the record nothing as to who were or could become members of the corporation. It must be concluded that the meeting at which it is claimed there were elected trustees of the defunct corporation who were authorized to execute the deed in question cannot be considered to have been a meeting of members of the defunct corporation, but on the contrary affirmatively appears to have been a meeting, or at least an attempt to hold a meeting, of the members of the church. But there is nothing in the record to justify a conclusion that a meeting of the members of the church, even if validly held, could in any way take any action whatsoever concerning the affairs of the defunct corporation and it results that it affirmatively appears from the record the persons who executed the deed purporting to act as trustees of the defunct corporation were not such and their deed was ineffective to transfer to the respondent any interest in the subject property.

The judgment is reversed.

Adams, P. J., and Peek, J., concurred.